# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE      )
                                   )
      v.                    )    Crim. ID. No. 2011007498
                                   )
SAVON BODDY,         )
                                   )
      Defendant.       )

## MEMORANDUM OPINION

Submitted: May 25, 2021
Decided: June 16, 2021

*Upon Consideration of Defendant's Motion to Transfer Charges to Family Court,*
**DENIED.**

Matthew Frawley, Esquire, and Matthew Buckworth, Esquire, Deputy Attorneys General, Department of Justice, Wilmington, Delaware. *Attorneys for the State.*

Monika Germono, Esquire and Meghan Crist, Esquire, Assistant Public Defenders, Office of Defense Services, Wilmington, Delaware. *Attorneys for Defendant.*

**MEDINILLA, J.**

# I.    INTRODUCTION

At 16,[1] Defendant Savon Boddy stands accused of Murder First Degree, two counts of Possession of a Firearm During the Commission of a Felony, Robbery First Degree, Conspiracy Second Degree, Possession, Purchase, Own or Control of a Firearm (Handgun) by a Juvenile, and Possession of a Deadly Weapon by a Person Prohibited.[2]  He seeks to transfer his charges to Family Court under 10 *Del. C.* § 1011.  A reverse amenability hearing was held on May 25, 2021.  Upon consideration, the parties' submissions, oral argument, and the record in this case, Defendant's Motion to Transfer Charges to Family Court is **DENIED.**

## II.    FACTUAL AND PROCEDURAL HISTORY[3]

The allegations in this case began as a drug deal and planned robbery that ended with the shooting death of Joseph Quick ("Quick").  The incident took place on November 15, 2020, on Ashley Drive in New Castle, Delaware.

Detective Brian Lucas of the New Castle County Police Department testified that on the day of the shooting, Quick was with his girlfriend when she received a message via Instagram from Defendant's account; the message was intended for Quick.  According to the girlfriend, after she handed him her cell phone, Quick told

---

[1] Defendant's date of birth is March 18, 2005.

[2] *See* Indictment, True Bill Filed, No. 52, *State of Delaware v. Savon Boddy*, Crim. I.D. No. 2011007498, D.I. 2 (Del. Super. Ct. Mar. 22, 2021).

[3] This recitation is based upon oral argument and evidence presented at the reverse amenability hearing on Defendant's Motion to Transfer on May 25, 2021.

her that he wanted to go and meet with someone. Quick then showed his girlfriend Defendant's Instagram account that included a picture of Defendant. The communications between Quick and Defendant involved coordinating a sale of marijuana to Defendant. After several attempts to send location information, Defendant sent Quick his phone number and location via text message where they planned to meet at a designated location on Ashley Drive.

Upon arrival at said location, Quick and his girlfriend sat in their parked car and waited for Defendant. She was driving the car while Quick sat in the front passenger seat. Defendant arrived with co-defendant and parked further down the street. Both defendants exited their vehicle; Defendant approached the vehicle on the passenger side where Quick was seated while co-defendant approached on the driver's side.

According to Detective Lucas, both co-defendant, age 16, and Quick's girlfriend essentially described similar versions of what took place between Quick and Defendant. First, that Defendant asked Quick to see the marijuana. Quick then handed him an unknown quantity, Defendant smelled it, and questioned the quality, suggesting the marijuana was not very good. Defendant then pulled the weapon, pointed it at Quick and said "give me everything you got." Quick grabbed the gun and attempted to either fight back or gain control of the weapon. After a single shot was fired, Defendant dropped the gun and fled with co-defendant. Quick told his

girlfriend to take him to a hospital. Quick died. The cause of death is ruled as a homicide by gunshot wound to the abdomen.

Co-defendant also told police that he knew Defendant as "Sav," who on the day of the shooting, arrived at his house in a silver car driven by an unknown female. Defendant indicated that he wanted to buy marijuana from Quick. While en route to the designated location, Defendant told co-defendant that he intended to rob Quick and displayed a black handgun.

During their flight, Defendant allegedly told co-defendant that he no longer possessed the gun. After the shooting, a search of the girlfriend's vehicle yielded a black Taurus 9mm handgun that was located on the front passenger side floor. The firearm matched the casing and bullet found in Quick's body. Although no fingerprints matching Defendant were found on the handgun, DNA matching Defendant was found on the magazine of the firearm. Detective Lucas could not say who pulled the trigger. No other firearms were found in the vehicle.

Police also obtained video surveillance from Ashley drive from neighborhood doorbell cameras. These videos show both defendants approach the vehicle momentarily and then after a gun shot is heard, the men are seen running back and re-entering their vehicle, which the investigation later revealed was stolen. Inside the stolen vehicle, Defendant's fingerprints are found consistent with where surveillance video shows Defendant entering the vehicle, further confirmed by co-

defendant as the same side of the car where Defendant entered and exited while on Ashley Drive.

Executed search warrants for Defendant's cellphone confirmed that the Instagram account belonged to Defendant and that it was Defendant's phone that had been used to contact Quick. Defendant was arrested on November 17, 2020.

On May 25, 2021, at Defendant's request, this Court held a reverse amenability hearing to determine whether the charges should be transferred to Family Court. Defendant's sole witness was Dr. Laura Cooney-Koss, Psy.D. In addition to Detective Lucas, the State called Jennifer Skinner on behalf of the Division of Youth Rehabilitative Services ("YRS") of the Department of Services for Children, Youth & Their Families ("DSCYF"). The parties stipulated to the introduction of Dr. Cooney-Koss's and Ms. Skinner's reports and to the introduction of the State's 52 exhibits.

### III. STANDARD OF REVIEW

The reverse amenability process is meant to identify juveniles charged as adults who are amenable to the rehabilitative process of the Family Court.[4] If the juvenile files a motion to transfer the adult charges, this Court must hold a reverse

---

[4] *See generally* 10 *Del. C.* §§ 1010-11; *see also Hughes v. State*, 653 A.2d 241, 249 (Del. 1994) (quoting *Marine v. State*, 624 A.2d 1181, 1184 (Del. 1993); *Marine v. State*, 607 A.2d 1185, 1209 (Del. 1992)).

amenability hearing and weigh the four factors set forth in 10 *Del. C.* § 1011(b).[5]

The Court considers evidence of: (1) "[t]he nature of the present offense and the extent and nature of the defendant's prior record, if any;"[6] (2) "[t]he nature of past treatment and rehabilitative efforts and the nature of the defendant's response thereto, if any;"[7] (3) "[w]hether the interests of society and the defendant would be best served by trial in the Family Court or in the Superior Court[;]"[8] and (4) any "other factors which, in the judgment of the Court are deemed relevant."[9]

## IV. DISCUSSION

### A. Fair Likelihood of Conviction

Before weighing the § 1011(b) factors, "this Court must preliminarily determine whether the State has made out a *prima facie* case against the juvenile."[10] The Court considers "whether there is a fair likelihood that [the defendant] will be convicted of the crimes charged."[11] Furthermore, "[a] real probability must exist that a reasonable jury could convict on the totality of the evidence assuming that the evidence adduced at the reverse amenability hearing stands unrebutted by the defendant at trial."[12] Since Defendant was 15 at the time of the alleged offenses, the

---

[5] *See, e.g.*, *State v. Harper*, 2014 WL 1303012, at *5-7 (Del. Super. Mar. 31, 2014).
[6] 10 *Del. C.* §1011(b)(1).
[7] *Id.* at § 1011(b)(2).
[8] *Id.* at § 1011(b)(3).
[9] *Id.* at § 1011(b).
[10] *Harper*, 2014 WL 1303012, at *5 (citing *Marine v. State*, 624 A.2d 1181, 1185 (Del. 1993)).
[11] *Id.* (citing *Marine*, 624 A.2d at 1185).
[12] *Id.*

Court need not consider the applicability of 11 *Del. C.* § 1447A(f) as to the firearm charges.[13]

At the outset, the State has established its *prima facie* case against Defendant as to all charges. The evidence shows that Defendant called Quick with intent to commit a robbery with a loaded firearm. Whether intentionally or recklessly, his decision to aim the gun at Quick during the robbery resulted in fatal consequences. That Quick may have attempted to fight for his life does not negate Defendant's criminal behavior.

After reviewing the totality of the evidence presented, there is a fair likelihood that Defendant would be convicted of the charged offenses. With witnesses, surveillance, co-defendant's statements, ballistic evidence, and social media depictions, etc., the State has established its *prima facie* case with a fair likelihood of conviction at trial.

---

[13] 11 *Del. C.* § 1447A(f) ("Every person charged under this section over the age of 16 years who, following an evidentiary hearing where the Superior Court finds proof positive or presumption great that the accused used, displayed, or discharged a firearm during the commission of a Title 11 or a Title 31 violent felony as set forth in § 4201 (c) of this title, shall be tried as an adult, notwithstanding any contrary provisions or statutes governing the Family Court or any other state law. The provisions of this section notwithstanding, the Attorney General may elect to proceed in Family Court.").

**B. Weighing § 1011(b)'s Four Factors**

The purpose of "determining a juveniles amenability is to place a judicial check on the prosecutorial charging of juveniles."[14]  However, 10 *Del. C.* § 1010 states that when a juvenile is charged with the crime of first-degree murder, among others, a child shall be proceeded against as an adult.[15]  Therefore, "since a juvenile charged with a designated felony in the Superior Court has lost the benefit of Family Court adjudication by statutory pronouncement, there is a presumption that a need exists for adult discipline and legal restraint.  Hence, the burden is upon the juvenile to demonstrate the contrary."[16]  In considering whether the factors weigh in favor of transfer, Defendant fails to meet his burden.

**1. Section 1011(b) Factor One: Nature of Present Offense and the Extent and Nature of Defendant's Prior Record**

The first § 1011(b) factor is two-pronged.[17]  Murder First Degree and the accompanying charges by definition are violent and serious, and weigh against transfer.  Defendant's alleged behavior demonstrates a conscious decision to rob an

---

[14] *Harper*, 2014 WL 1303012, at *4 (citing *State v. Anderson*, 385 A.2d 738, 383 (Del. Super. 1978)).

[15] *See* 10 *Del. C.* § 1010(a)(1).

[16] *Harper*, 2014 WL 1303012, at *4 (quoting *Anderson*, 385 A.2d at 740) (internal quotations omitted); *see also State v. Mayhall*, 659 A.2d 790, 795 (Del. Super. 1995) ("I also take into consideration the fact that by including second degree murder in those offenses where original jurisdiction has been conferred on the Superior Court under 10 *Del. C.* § 1010 the legislature has created a rebuttable presumption that juveniles charged with that crime should be tried as adults and the burden of proof rests with each defendant to rebut that presumption.").

[17] *See* 10 *Del. C.* § 1011(b)(1).

7

individual after a drug deal. The second prong also weighs against transfer. Defendant is a person prohibited from possessing a firearm due to a juvenile adjudication for Robbery Second Degree. Furthermore, Defendant was arrested in New Jersey for Possession with Intent to Deliver and Firearms on July 17, 2020, while still on probation. The arrest did not trigger a violation in Delaware. Therefore, he was noted to have completed probation on August 4, 2020. The fatal shooting took place three months later. As to both prongs, this factor weighs against transfer.

### 2. Section 1011(b) Factor Two: Nature of Past Treatment and Defendant's Response

Defendant's criminal history demonstrates that attempts at supervision and rehabilitative efforts have failed. Though Defendant has not received services through Level IV or Level V facilities, it is clear he did not respond to the rehabilitative efforts of the Family Court as he continued to engage in criminal conduct that involved firearms and drugs. This factor weighs against transfer.

### 3. Section 1011(b) Factor Three: Interests of Society and Defendant

Rehabilitative efforts and services have not proven successful. Defendant's violent behavior has escalated despite efforts from YRS and the Family Court.

Probation has not worked. Lesser sanctions through Family Court have also failed. The Court finds that the interest of society and Defendant weigh against a transfer.[18]

## V. CONCLUSION

Under § 1011(b), the Court finds that all factors weigh against transfer. For the reasons stated above, Defendant's Motion to Transfer Charges to Family Court is **DENIED**. His charges will remain in this Court.

**IT IS SO ORDERED.**

/s/ Vivian L. Medinilla
Judge Vivian L. Medinilla

oc: Prothonotary
cc: Defendant
Department of Justice
Office of Defense Services

---

[18] The fourth factor of § 1011(b) – other factors the Court deems relevant – has been sufficiently addressed in the other § 1011(b) factors such that the Court need not explicitly address this factor in this ruling.